Meady B. DANIELS, Paul Roth, Richard B. McNees, Irving H. Knudson, Jr., Harold E. Nelson, Frank J. Schneider; and Mary Frances Daniels and Rebecca Jean Daniels, infants who sue by Meady B. Daniels, their father and next friend; Elizabeth Roth, Marilyn Roth and Martha Anne Roth, infants who sue by Paul Roth, their father and next friend; Richard B. McNees, Jr., an infant who sues by Ricard B. McNees, his father and next friend; Kristen A. Knudson and Deborah S. Knudson, infants who sue by Irving H. Knudson, Jr., their father and next friend; Teresa Diane Nelson and Stephen Thackeray Nelson, infants who sue by Harold E. Nelson, their father and next friend; and Stephen Schneider and Sean Schneider, infants who sue by Frank J. Schneider, their father and next friend, Plaintiffs,

v.

The SCHOOL BOARD OF PRINCESS ANNE COUNTY, VIRGINIA; John B. Dey, Roger B. Sawyer, Lloyd Murden, L. Harold Jackson and Luther E. Gilbert, individually, and as members of the School Board of Princess Anne County, Virginia; Frank W. Cox, individually, and as Division Superintendent of Schools of the County of Princess Anne, Virginia; and Samuel Brownell, Commissioner of Education of the United States of America, Defendants.

Civ. A. No. 2252.

United States District Court
E. D. Virginia, Norfolk Division.

Oct. 23, 1956.

Archie L. Boswell, Norfolk, Va., for plaintiffs.

William L. Parker, Norfolk, Va., P. W. Ackiss, Jr., Virginia Beach, Va., Robert S. Wahab, Jr., Commonwealth's Atty., Princess Anne, Va., L. S. Parsons, Jr., U. S. Atty., Norfolk, Va., for defendants.

HOFFMAN, District Judge.

This is an action by way of declaratory judgment instituted by certain adult and infant plaintiffs against The School Board of Princess Anne County, Virginia, its individual members, the Division Superintendent of the schools located in said County, and the United States Commissioner of Education. The adult plaintiffs are residents and taxpayers of the County mentioned and, in addition, are employed by or affiliated with the Federal Government in various

capacities. Each of the adult plaintiffs are parents of children attending, or eligible to attend, the elementary public schools of Princess Anne County, Virginia. The infant plaintiffs, all joining in this action through their next friend, allege that they are federally connected within the meaning of Public Law 815 of the 81st Congress, approved September 23, 1950, as amended, the details of which are found in 20 U.S.C.A. §§ 251 to 311, both inclusive, and that said children were all enrolled in the Little Creek Elementary School for the school year ending in January, 1956, or, if not so enrolled, would be eligible for enrollment in September, 1956. In substance, the plaintiffs allege that this proceeding is a class action for all parents and children similarly situated.

During November, 1954, the defendant School Board made application to the United States Commissioner of Education for financial assistance under Title III of Public Law 815 in connection with the construction of two public schools to be located in said County; one of said schools being designated as East Little Creek School for which the sum of $560,000 was requested; the other school being designated as North Side School for which the sum of $550,000 was requested. The requisite applications were executed in accordance with Public Law 815 and contained information showing the specific designation of the site for each school project, as well as other information deemed unimportant for the purposes of the discussion herein. It is sufficient to point out that the original intent of the School Board was to obtain Federal assistance in relieving the congestion in the Bayside area, where there were three elementary schools having a total capacity of 1,650 pupils in which, during 1954, there were enrolled 2,539 children including 1,648 Federally connected children. It is obvious that the need was urgent and the original intentions of the School Board were indeed laudable.

On or about June 27, 1955, the Commissioner of Education approved the two applications and funds were reserved for the projects. Approximately one month prior to approval by the Commissioner, the Council of the City of Norfolk directed that data be prepared looking forward to the annexation of substantially all of the area sought to be relieved by the school construction specified in said applications. On February 16, 1956, annexation proceedings were instituted by the City of Norfolk against the County of Princess Anne pursuant to the laws of Virginia; a portion of the territory sought to be annexed including the sites originally designated in the applications for the financial assistance filed with the Commissioner.

Plaintiffs allege, and for the purpose of a determination of the several motions now pending before the Court it must be accepted as a fact, that the defendant School Board failed to begin construction on the projects within a reasonable length of time; that the defendant School Board and its Division Superintendent, after learning of the anticipated annexation proceedings, changed the site locations of the two schools to other sites far removed from the original areas which, in effect, nullified the intent of the original applications insofar as they sought to relieve the badly congested Bayside area; that the true motive for these changes was to divert the funds so reserved by the Commissioner and thereby secure new school locations in areas not included in the proposed annexation.

Plaintiffs further allege, and it was so admitted in oral argument, that the attention of the United States Commissioner of Education was forcibly directed to the acts of the defendant School Board, its individual members, and its Division Superintendent, but that the Commissioner refused to intercede or take any action in discontinuing Federal assistance for the alleged wrongfully substituted school projects. On the contrary, the Commissioner, with full knowledge of the contentions now advanced, has continued to certify the projects for payment. At the time of oral argument it

was stated that the two projects are now substantially completed and that the only remaining funds forthcoming from the Federal Government is the customary ten per cent retainment.

This Court is requested to declare whether the moving of either or both of the school construction projects, and the diversion of funds to school purposes other than those for which applications had been approved, constitute violations of Public Law 815. An injunction is sought against all defendants, including the United States Commissioner of Education, to prevent the further expending of funds. Additionally, a judgment is requested directing the School Board to repay to the United States of America the amounts advanced by the Federal Government for the benefit of the later selected school projects on which the funds were expended.

At the outset, we are met with motions to dismiss filed by all defendants. As to the defendant, Samuel Brownell, United States Commissioner of Education, it is conceded by plaintiffs that their rights, if any, must be maintained at the place of his official residence which is in the District of Columbia, as this defendant has been sued in his official capacity. It is unnecessary, therefore, to explore the further theory that this is, in reality, an action against the United States of America which has not consented to be sued or waived its immunity from suit. The motion to dismiss as filed by the defendant, Brownell, in his capacity as Commissioner of Education, is granted and the complaint is accordingly dismissed as to said defendant.

The remaining defendants contend that their motion to dismiss, or their alternative motion for summary judgment on the pleadings, should be granted for several reasons. Without passing upon the rights of these defendants to urge dismissal of the action on the ground that the action is, in substance, a suit against the United States which has not consented to be sued, and leaning to the belief that a federal question may be presented but not so deciding, this Court is of the opinion the complaint, taken as a whole, fails to state a claim against the defendants upon which relief can be granted, and that the plaintiffs have no standing in this Court.

Sympathetic though it may be with the plight of the plaintiffs, the Court concludes that Public Law 815 of the 81st Congress was never intended to confer rights upon individual school children and their parents in seeking to remedy alleged violations of the law in question. To hold otherwise would permit the courts to become congested with like actions and would, in effect, bring about a substitution of judicial determination for what Congress obviously intended, subject to certain limitations, to be confined to the discretion of the United States Commissioner of Education, the local educational agency, and the State educational agency. In 1950 Congress saw fit to enact Chapter 14, Title 20, U.S.C.A., entitled "School Construction in Areas Affected by Federal Activities". The increased activity of our national government brought about by reason of two world wars, an expanding defense program, the development of atomic energy, and other factors which may or may not have been necessary, has had its impact on educational facilities in certain localities throughout our nation. To alleviate this condition Congress has appropriated large sums of money to aid states and localities thereby affected by the influx of Federally connected school children. In the area known as Tidewater, Virginia, where this controversy arose, it is freely recognized that Federal assistance in the school construction program has been of vital importance in keeping pace with rapidly changing requirements in the educational field.

It is abundantly clear that the Commissioner of Public Education has been granted ample authority by Congress to take appropriate action, in his discretion, to correct the situation now urged upon this Court by the plaintiffs herein. The only provision for the Commissioner's action in withholding certification

and making allowance for judicial review is set forth in 20 U.S.C.A. § 277, which reads:

"(a) Whenever the Commissioner of Education, after reasonable notice and opportunity for hearing to a local educational agency, finds (1) that there is a substantial failure to comply with the drawings and specifications for the project, (2) that any funds paid to a local educational agency under this subchapter have been diverted from the purposes for which paid, or (3) that any assurance given in an application is not being or cannot be carried out, the Commissioner may forthwith notify the Secretary of the Treasury and such agency that no further certification will be made under this subchapter with respect to such agency until there is no longer any failure to comply or the diversion or default has been corrected or, if compliance or correction is impossible, until such agency repays or arranges for the repayment of Federal moneys which have been diverted or improperly expended.

"(b) The final refusal of the Commissioner to approve part or all of any application under this subchapter or subchapter III of this chapter, and the Commissioner's final action under subsection (a) of this section or under section 301 of this title, shall be subject to judicial review on the record, in the United States Court of Appeals for the circuit in which the local educational agency is located, in accordance with the provisions of the Administrative Procedure Act."

From a reading of the foregoing, it is apparent that Congress intended to vest in the Commissioner of Public Education sole authority to take action in cases wherein the local educational agency failed to comply with the policy and purposes of the law. In the instant case, for reasons not revealed by the pleadings, the Commissioner has refused to act, although he was immediately advised of the actions of the other defendants in this controversy. The fact that Congress did not see fit to provide for public hearings or notice to the public as such, but limited any notice or hearing to the local educational agency, is convincing evidence of the Congressional intent to exclude the conferring of rights upon any taxpayers or citizens, even though the latter may be directly affected by the action, or failure to act, on the part of the Commissioner. Moreover, the Commissioner's action in refusing to approve part or all of any application for financial assistance is subject to judicial review solely by the United States Court of Appeals for the circuit in which the local educational agency is located. Similar procedures are provided for in appeals from the National Labor Relations Board, where the appeal is direct to the Circuit Court of Appeals and the District Court is without jurisdiction.

It is true that the declaration of policy as set forth in 20 U.S.C.A. § 271, and the spirit of the law as otherwise provided, clearly show an intention to provide relief for areas in which Federally connected children have become a problem to the local educational system. The violation of the policy expressed and the spirit of the law does not, in itself, afford a right to a person adversely affected thereby. Nor does it provide a remedy through our system of Federal Courts. There is no constitutional right involved and, for this reason, the school segregation cases and other related authorities have no bearing on this case.

There is no precedent for this action and it is improbable that the factual situation will again arise. It is fair to assume that local educational agencies are desirous of continuing the financial assistance program as promulgated by Congress, and that the pending annexation revised the plans of the local authorities in this particular case. While not in point on the facts, the case of Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 879, 84 L.Ed. 1108, contains language pointing a warning finger at the courts, where it is said:

" 'The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them.' "

Holding that this Court is without jurisdiction to entertain this controversy and that the plaintiffs have no standing under the complaint filed herein, counsel for said defendants are directed to prepare a final decree dismissing the action and, after presentation to opposing counsel for inspection, present the same for entry.